UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Pedro Manzanales, Jr., | |
| Plaintiff, | Case No. 13 C 7988 |
| v. | |
| Hare Krishna and Konstantin Slavin, | Judge John Robert Blakey |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

This is a deliberate indifference action brought under Section 1983. Plaintiff Pedro Manzanales, an inmate at Pontiac Correctional Center, alleges that Defendants Dr. Hare Krishna and Dr. Konstantin Slavin caused him to decline obtaining necessary medical care by failing to disclose all material risks of not obtaining that care.

Defendants move to dismiss [43] the Amended Complaint [8] on five separate grounds under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). That motion is denied in its entirety.

**I.       Legal Standard**

Under Rule 12(b)(5), Plaintiff bears the burden to demonstrate that this Court has jurisdiction over Defendants through effective service. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). If this Court finds Plaintiff has not met that burden and lacks good cause for not perfecting service, then this Court either must dismiss the suit or specify a time within which Plaintiff must serve

Defendants. *Id.* The decision to dismiss or extend the period for service is within this Court's discretion. *Cardenas*, 646 F.3d at 1005; *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

Under Rule 12(b)(6), this Court must construe the Amended Complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts and draw reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive Defendant's motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**II.	Facts**

**A.	Medical Care**

This Court accepts as true the following facts from Plaintiff's Amended Complaint [8].

Defendants Dr. Hare Krishna and Dr. Konstantin Slavin are orthopedic surgeons allegedly employed by "University of Illinois Hospital." Amended Complaint at 2. On or about September 9, 2011, Dr. Krishna and/or Dr. Slavin performed spinal surgery (specifically, a cervical diskectomy of the C5, C6 and C7 vertebrae) on Plaintiff Pedro Manzanales at the University of Illinois Hospital or otherwise treated him in September 2011. Amended Complaint ¶¶ 1, 10. Following the surgery, Plaintiff experienced paralysis in his left leg and numbness on his right side. Amended Complaint ¶ 2.

At an unidentified time (but apparently shortly after the September 9, 2011 surgery), Plaintiff received a CAT scan and MRI which revealed lingering pressure in the C5, C6 and C7 vertebrae. Amended Complaint ¶ 3. Defendants offered Plaintiff a "revision surgery" to alleviate the pressure in his spine, but Plaintiff declined because of his then-understanding of the risks of undergoing and forgoing revision surgery. Amended Complaint ¶¶ 4, 11-12. Before deciding to forgo revision surgery and sometime during September 9 to 23, 2011, Plaintiff asked Defendants "extensive questions concerning his future health" and also asked about "any negative ramifications" of forgoing revision surgery. Amended Complaint ¶¶ 13-15. Neither Defendant informed Plaintiff that he risked losing use of his left hand by forgoing revision surgery. Amended Complaint ¶¶ 11-12, 16.

Plaintiff alleges that his condition deteriorated and that "his left hand became immobile." Amended Complaint ¶ 5. On October 31, 2011, Plaintiff was seen by Dr. Slavin and explained his worsening condition. Amended Complaint ¶ 6.

Dr. Slavin ordered a MRI, which was administered on December 29, 2011, yet allegedly told Plaintiff that he would not operate on his neck again, regardless of how much pain Plaintiff was experiencing. Amended Complaint ¶¶ 6-7.

On November 13, 2012, Plaintiff saw an "orthopedic specialist" (who is not identified by name) at OSF St. James Hospital. Amended Complaint ¶ 8. The specialist determined that Plaintiff's condition was neurological rather than orthopedic, stemming from the pressure remaining in Plaintiff's cervical spine. Amended Complaint ¶ 9. The specialist allegedly opined that Defendants should have informed Plaintiff of the pressure remaining in his spine and that the pressure, if not corrected through revision surgery, would render his left hand useless. Amended Complaint ¶ 10.

Plaintiff alleges that he "now suffers from partial paralysis in both hands, spinal problems … and partial loss of ambulatory functioning, requiring the use of a walker and/or wheelchair." Amended Complaint ¶ 21.

### B. Procedural History

On December 5, 2013, Judge Darrah (who presided over this case before it was reassigned) issued an Order [4] giving Plaintiff leave to proceed *in forma pauperis* and recruiting counsel to represent Plaintiff. The Court, however, suspended issuing summons. The initial counsel moved to withdraw and, during January 21 to September 4, 2014, so did the next three recruited counsel. [4]; [10]; [13]; [21]; [25]. The fifth counsel was recruited on September 4, 2014, made an appearance on October 31, 2014 and continues to represent Plaintiff. [25]; [33].

Summons was issued on January 13, 2015 and service was perfected on January 18 and 23, 2015. [48]; [49].

## III. Analysis

This Court addresses each of Defendants' five bases for moving to dismiss in turn and concludes that none have merit at this early stage in the litigation.

### A. Insufficient Service of Process

Defendants argue that under Rule 12(b)(5), service of process was deficient because Plaintiff effectuated service after the 120-day period allowed by Rule 4(m). [44] at 2-3; [51] at 2. Rule 4(m) requires service within 120 days after the complaint is filed but permits extensions where Plaintiff shows "good cause." Defendants argue that the Complaint was filed November 6, 2013, yet service was not perfected until January 18 and 23, 2015—a period of 438 days. [1]; [48]; [49]; [51] at 2 (Technically, Rule 4(m) did not begin to run until December 5, 2012, when this Court screened and approved Plaintiff's claim pursuant to 28 U.S.C. § 1915A. *Donald v. Cook County Sherrif's Department*, 95 F.3d 548, 557 n.5 (7th Cir. 1996).)

There is no dispute that the 120-day period has lapsed; the issue therefore is whether Plaintiff had "good cause" for delaying service of process. If so, Rule 4(m) requires this Court to grant an extension. *Coleman v. Milwaukee Board of School Directors*, 290 F.3d 932, 933 (7th Cir. 2002).

Plaintiff argues that Judge Darrah tacitly found good cause because the Court would not have recruited counsel and postponed issuing summons only to render Plaintiff's claims untenable under Rule 4(m). [50] at 6-9. That is correct,

5

and, even if it were not, this Court would find good cause now for extending the Rule 4(m) deadline, or would otherwise exercise its discretion to permit the case to proceed now that service has been perfected. *See Cardenas*, 646 F.3d at 1005.

Good cause for missing the 120-day deadline is a discretionary determination entrusted to this Court. *Cardenas*, 646 F.3d at 1005; *Ligas*, 549 F.3d at 501. While Rule 4(m) does not define "good cause," trial courts in this district have found that efforts to recruit counsel constitute good cause for delayed service. *E.g.*, *Jamison v. Cook County, Illinois*, No. 11-7985, 2014 WL 3639111, at *2-4 (N.D. Ill. July 23, 2014); *Agostin v. American Airlines, Inc.*, No. 01-3203, 2003 WL 21349476, at *5 (N.D. Ill. Jan. 2, 2003). Indeed, the circumstances here are more compelling than in *Jamison*, 2014 WL 3639111, at *2-4, where the Court found good cause for an extension under Rule 4(m) and denied the motion to dismiss. In that case, the delay in perfecting service lasted approximately 28 months—more time than here—because: (1) four recruited counsel "withdrew without conducting any work" on the inmates' Section 1983 claim; (2) a fifth recruited counsel spent four months working on the case, but withdrew before filing an amended complaint; and (3) the sixth recruited counsel took 13 months to file an amended complaint and to send waivers of service to the defendants. *Id.*

The Court in *Jamison* explained that the inmates were entitled to rely on recruited counsel for competent representation and should not be penalized by having their claims foreclosed because of delays outside their control. *Id.* at *4. The Court further explained the rationale of suspending service until recruited

6

counsel has had an opportunity to file an amended complaint. *Id.* at *3. *Pro se* plaintiffs are not trained lawyers and may name incorrect or immune defendants, so service is sometimes wasteful until recruited counsel has had an opportunity to cure any pleading deficiencies. *Id.* at *3. This Court agrees with this analysis.

Here, as shown by *Jamison*, an extension of Rule 4(m)'s 120-day deadline is warranted for two independent reasons. First, it was appropriate for Judge Darrah to suspend service on December 5, 2013 until counsel was recruited and had an opportunity to proceed on the merits of the case. Second, Plaintiff has relied on recruited counsel for representation, and this Court declines to penalize Plaintiff for delays outside his control. Plaintiff's fifth and current counsel was recruited on September 4, 2014, and counsel filed an appearance on October 31, 2014. [33]. The Clerk issued summons less than 90 later, on January 13, 2015, and service was effectuated on January 18 and 23, 2015. [48]; [49].

For these reasons, Defendants' motion to dismiss for insufficient service of process is denied.

B.   **Statute of Limitations**

Defendants next argue that Plaintiff's claim is barred under Illinois' two-year personal injury statute of limitations (735 ILCS 5/13-202) because his claim "concerns care provided on or before October 31, 2011," yet his initial Complaint was not filed until more than two years later—on November 6, 2013. [44] at 4. Section 5/13-202 is the relevant state statute of limitations for Section 1983 actions arising from injuries in Illinois. *Ray v. Maher*, 662 F.3d 770, 772-73 (7th Cir. 2011);

7

*Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 716 (7th Cir. 1994).

Generally, complaints need not anticipate or overcome affirmative defenses such as the statute of limitations. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). In this case, Plaintiff has not pled himself out of court, and there are two sets of factual issues that cannot be resolved at this early stage, but which might render this action timely.

First, the discovery rule may apply. The general rule is that a cause of action for personal injury accrues when Plaintiff is injured. *Hollander*, 457 F.3d at 692. In order to alleviate potential harshness from a strict application of that rule, however, Illinois courts recognize a "discovery rule" exception. *Hollander*, 457 F.3d at 692; *see also Cathedral of Joy*, 22 F.3d at 717 (the discovery rule is "read into state statutes of limitations in federal question cases"). The discovery rule postpones the running of the statute of limitations until Plaintiff "knows or reasonably should know" that he has been injured and that his injury was wrongfully caused. *Hollander*, 457 F.3d at 692.

When the discovery rule applies, the statute of limitations does not run until the alleged victim: (1) discovers his injury and learns that it was wrongfully caused; or (2) has sufficient information about the injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. *Aebischer v. Stryker Corp.*, 535 F.3d 732, 733 (7th Cir. 2008). There is no requirement, however, that Plaintiff discover the full extent of his injuries before the statute of limitations

begins to run.  *Golla v. General Motors Corp.*, 657 N.E.2d 894, 901 (Ill. 1995); *see also Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994); *Wilson v. Groze*, 800 F. Supp. 2d 949, 957 (N.D. Ill. 2011).

Here, Plaintiff has pled facts sufficient to raise the potential application of the discovery rule.  Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs because, in September 2011, they failed to disclose all material risks of Plaintiff declining revision surgery.  Amended Complaint ¶ 20.  Plaintiff further alleges that he did not learn of the undisclosed risks until November 13, 2012, when Plaintiff saw an orthopedic specialist who informed him that Defendants should have disclosed those risks.  Amended Complaint ¶¶ 10-12, 14-16.  Based on these allegations and construing the Amended Complaint in the light most favorable to Plaintiff, as this Court must do, Plaintiff has a plausible argument that he did not learn the basis of his injury until November 13, 2012.  November 13, 2012 is within two years of the filing of this action.

In these respects, this case parallels *Pettiford v. Sheahan*, No. 02-1777, 2004 WL 626151, at *9-10 (N.D. Ill. March 26, 2004), a Section 1983 case where the Court denied a motion to dismiss based on the plausible application of the discovery rule.  The inmate in *Pettiford* had alleged that the defendants had covered-up an alleged beating, thereby denying the inmate access to the courts.  *Id.* at *1, 8-9.  The Court found that the statute of limitations accrued when the inmate learned of the defendants' cover-up activities—and not the date of the alleged beating.  *Id.* at *10.

9

That is analogous to Plaintiff allegedly not learning that material information was withheld from him by Defendants here.

Second, even if the statute of limitations began to run in September 2011, Defendants' motion to dismiss is also denied because the statute of limitations may have been tolled for a sufficient period of time while Plaintiff exhausted his administrative remedies at Pontiac Correctional Center under the Prison Litigation Reform Act. 42 U.S.C.A. § 1997e(a); *Johnson v. Rivera*, 272 F.3d 519, 521-22 (7th Cir. 2001). That too is a factual issue that cannot be resolved at the motion to dismiss stage. *Hollander*, 457 F.3d at 691 n.1.

For these two reasons, Defendants' motion to dismiss based on the statute of limitations is denied.

### C. Deliberate Indifference

Defendants argue that Plaintiff has failed to state a plausible deliberate indifference claim. [44] at 7-8. To prove a claim for deliberate indifference, Plaintiff must show: (1) that he had an objectively serious medical condition; (2) that Defendants knew of the condition and were deliberately indifferent to treating Plaintiff; and (3) that this indifference injured Plaintiff. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

There is no dispute (at least at this stage) that Plaintiff has met the first and third elements, and with good reason. Plaintiff alleges that his medical need was so serious that he received a diskectomy, which ultimately resulted in lingering

10

pressure in his spine and partial paralysis in his hands. Amended Complaint ¶¶ 1-3, 5, 21.

Defendants instead focus on the second element: deliberate indifference. The Seventh Circuit recently has confirmed (albeit in unpublished opinions) that one type of deliberate indifference claim is where a doctor fails to disclose information that is "reasonably necessary to make an informed decision to accept or reject proposed treatment," but only if the failure to disclose creates a substantial risk of serious damage to the prisoner's health. *Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364, 366-67 (7th Cir. 2013); *see also Cox v. Brubaker*, 558 F. App'x 677, 678-79 (7th Cir. 2014). Other circuits also have recognized such a claim. *Cox*, 558 F. App'x at 678-79 (citing cases from the Second, Third, Fifth and Ninth Circuits).

*Cox* and *Phillips* confirm that Plaintiff has pled sufficient facts at this point in the proceedings to sustain a deliberate indifference claim. The allegations here state that Defendants caused Plaintiff to forgo revision surgery by withholding information about the material risks of that choice. Plaintiff has pled that Defendants withheld this information despite his "extensive questions." Amended Complaint ¶ 14. Plaintiff, moreover, has pled that an "orthopedic specialist" opined that Defendants should have informed Plaintiff of the pressure remaining in his spine and that the pressure, if not corrected through revision surgery, would render his left hand useless. Amended Complaint ¶ 10. That suggests, drawing all inferences in favor of Plaintiff, that Defendants ignored a substantial (and not a minor) risk. Similarly, in *Bond v. Aguinaldo*, 265 F. Supp. 2d 926, 928-29 (N.D. Ill.

11

2003), the Court denied a motion to dismiss because the inmate pled that the defendant-doctor was aware of his back and throat pain yet failed to respond to requests for treatment and ignored the recommendations of specialists.

For these reasons, the allegations here are sufficient to survive a motion to dismiss.

### D. State Actors

Defendants argue that they cannot be held liable under Section 1983 because they are not state actors. [44] at 11.

Section 1983 applies only to persons who act "under color of any statute, ordinance, regulation, custom, or usage." Section 1983 encompasses government employees and, under certain circumstances, also non-government employees who are employed by a private entity but provide services to the government. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 823-27 (7th Cir. 2009). Accordingly, physicians employed by the state to provide medical services to state inmates are state actors under Section 1983. *Rodriguez*, 577 F.3d at 824-25 (analyzing *West v. Atkins*, 487 U.S. 42 (1988)). By comparison, for privately-employed physicians, determining whether they are state actors under Section 1983 is a functional inquiry that focuses on the relationship between the state, the medical provider, and the inmate. *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 797 (7th Cir. 2014); *Rodriguez*, 577 F.3d at 826-27.

*Shields* is an instructive case about when private physicians are state actors. The inmate in *Shields*, like Plaintiff here, sued two private physicians employed by

the Southern Illinois University School of Medicine for deliberate indifference. 746 F.3d at 785. The two physicians had examined the inmate just once and recommended physical therapy, but they did not schedule any follow-up appointments or otherwise oversee the inmate's course of treatment. *Id.* at 798. Under those facts, the Seventh Circuit, at summary judgment (and not on a motion to dismiss), found that the physicians were not state actors under Section 1983 because had only an "incidental or transitory relationship" with the prison system. *Id.* at 797-98 (internal quotations omitted); *see also Shields v. Acevedo*, No. 10-3746, 2012 WL 2423105, at *3 (N.D. Ill. June 25, 2012).

Moreover, in *Rodriguez*, because the inmate was transferred to and from a series of private medical providers, the Court's functional inquiry focused on the "relationship among the state, the health care provider *and* the prisoner." 577 F.3d at 826 (emphasis in original). The Seventh Circuit could not tell, "on the face of the complaint alone," however, whether the ambulance service's emergency medical technicians were state actors under Section 1983. *Id.* at 830. The Seventh Circuit thus reversed the district court, which had dismissed the complaint on initial screening, remarking that the relationship between the defendants and the state required "limited discovery." *Rodriguez*, 577 F.3d at 830; *see also Verser v. Ghosh*, No. 10-409, 2010 WL 5014134, at *3-4 (N.D. Ill. Dec. 3, 2010) (denying the motion to dismiss because the Court could not determine from the complaint whether the doctor who treated the inmate once was a state actor).

13

Here, there is no allegation that Defendants are state employees or state contractors. Rather, it appears that Defendants are more like the University-employed doctors in *Shields* or the technicians in *Rodriguez*. As such, this Court must conduct a functional inquiry. As in *Rodriguez*, however, the Amended Complaint alone does not provide a sufficient factual record to conduct this inquiry. All that is before this Court are Plaintiff's allegations that Defendants treated him multiple times from September 9 to at least October 31, 2011, offered him revision surgery, scheduled MRIs and decided his course of treatment. Amended Complaint ¶¶ 1, 3-4, 6. Those are stronger facts than in *Shields*, but more is needed to determine whether Defendants are state actors.

For these reasons, this Court denies Defendants' argument that they are not state actors at this early stage in the proceedings.

### E. Form of Pleading

Defendants last argue that Plaintiff failed to comply with Rule 10(b) by failing to clearly assert separate claims against the two Defendants. [44] at 11-12. In paragraphs 20 and 21 of the Amended Complaint, Plaintiffs bring a single deliberate indifference claim against both Defendants.

Nothing more, however, is required here. Plaintiff correctly argues that Rule 10(b) requires that each claim founded on a separate transaction or occurrence must be stated in a separate count only if doing so "would promote clarity." [50] at 14-15. Those requirements are not met here. The claims against Dr. Krishna and Dr. Slavin arise from the same transaction or occurrence—their purported failure to

disclose material risks associated with forgoing revisions surgery—and this Court further finds that having Plaintiff further break down paragraphs 20 and 21 of the Amended Complaint would not promote clarity.

## IV. Conclusion

Defendants' motion to dismiss [43] is denied. This case remains set for a status hearing on July 1, 2015 at 9:45 a.m. in Courtroom 1725.

Dated: June 30, 2015

Entered:

_____
John Robert Blakey
United States District Judge